UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION


EVANSTON INSURANCE COMPANY                              PLAINTIFF


VS.                                    CIVIL ACTION NO. 4:05CV180LN


NESHOBA COUNTY FAIR ASSOCIATION,
INC. AND REBECCA DIANE WRIGHT                          DEFENDANTS


MEMORANDUM OPINION AND ORDER

This cause is before the court on the motion of plaintiff
Evanston Insurance Company for summary judgment.  Defendant
Neshoba County Fair Association, Inc. has responded in opposition
to the motion and the court, having considered the memoranda of
authorities, together with attachments, submitted by the parties,
concludes that Evanston's motion is well taken and should be
granted.

This is a declaratory judgment action brought by Evanston
seeking an adjudication that it has no duty to defend or indemnify
Neshoba County Fair Association (Fair Association), its insured
under a liability policy issued July 20, 2004, in connection with
a lawsuit filed against the Fair Association in the Circuit Court
of Neshoba County on September 16, 2005 by Rebecca Wright.  Wright
sued the Fair Association seeking damages based on allegations
that the Fair Association and/or its agents, servants and
employees refused her request for medical assistance or

transportation to the hospital when Wright became ill while attending the Neshoba County Fair.  Upon notification of the Wright lawsuit, Evanston assumed the Fair Association's defense in the action under reservation of rights, and then filed the present declaratory judgment action seeking an adjudication that its policy provides no coverage for the claims brought by Wright. Evanston has now moved for summary judgment, contending that as a matter of law, its policy affords no coverage for the claims brought by Wright against the Fair Association because the claims do not allege an "occurrence" as defined by the policy, but that even if the claims did allege an "occurrence," there would be no coverage in light of the policy's expected or intended injury exclusion and professional services exclusion.

"Mississippi has adopted the 'allegations of the complaint' rule (sometimes referred to as the eight-corners test) to determine whether an insurer has a duty to defend," pursuant to which the court reviews the allegations in the underlying complaint to see whether it states a claim that is within or arguably within the scope of the coverage provided by the insurance policy.  Ingalls Shipbuilding v. Federal Ins. Co., 410 F.3d 214, 225 (5th Cir. 2005).  In so doing, the court compares "the words of the complaint with the words of the policy, looking "not to the particular legal theories" pursued by the plaintiff, "but to the allegedly tortious conduct underlying" the suit.  Id.

(citations omitted).  See also United States Fidelity & Guarn. Co. v. Omnibank, 812 So. 2d 196, 200 (Miss. 2002).  If the complaint alleges facts which are arguably within the policy's coverage, a duty to defend arises.[1]

Wright's complaint does not allege facts which are arguably within the policy's coverage.  Evanston's policy provides liability coverage for bodily injury or property damage caused by "occurrence," which is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."  Although the policy does not define "accident," the Mississippi Supreme Court has held that there is no "occurrence" under policies which define "occurrence" as an "accident" if the harm for which recovery is sought from the insured resulted from an insured's intentional or deliberate actions, even if the insured did not intend such harm.  It is further settled under Mississippi law that an insurer's duty to defend under a general commercial liability policy for injuries caused by accidents does not extend "to injuries unintended by the insured but which resulted from intentional actions of the insured" even if those actions were not intentionally tortious but

---

[1]    The duty to defend is broader than the duty to indemnify, and exists if the complaint alleges facts that place the claim arguably within a policy's coverage.  See U.S. Fidelity & Guarn. Co. v. Omnibank, 812 So. 2d 196, 200 (Miss. 2002).  Thus, there may be a there is no duty to defend even where there is ultimately no duty to indemnify, but if there is no duty to defend, there can be no duty to indemnify.

3

rather only negligent.  If the acts themselves were not accidental, even if they may have been negligent, then there is no "occurrence."  See United States Fidelity & Guarn. Co. v. Omnibank, 812 So. 2d 196, 197 (Miss. 2002) (holding that "an insurer's duty to defend under a general commercial liability policy does not extend to negligent actions that are intentionally caused by the insured," or, stated another way, that "even if an insured acts in a negligent manner, that action must still be accidental and unintended in order to implicate policy coverage"); see also ACS Const. Co., Inc. of Mississippi v. CGU, 332 F.3d 885, 890 (5th Cir. 2003) (holding there was no coverage for claims in underlying suit that contractor had been negligent in installation of waterproofing membrane to the roofs of munitions bunkers as a result of which they leaked, because "even though the installation of the membrane was done negligently, the action of installing the membrane was not accidental nor unintended to implicate coverage under the policy"); Allstate Ins. Co. v. Moulton, 464 So. 2d 507, 510 (Miss. 1985) (holding that in determining whether there had been an occurrence, "[t]he only relevant consideration is whether, according to the declaration, the chain of events leading to the injuries complained of were set in motion and followed a course consciously devised and controlled by [the insured] without the unexpected intervention of any third person or extrinsic force").

Wright alleges in her complaint that the Fair Association contracted Quorum Health Resources, LLC (also a defendant in her lawsuit) to supply Neshoba County General Hospital Ambulance Services to aid and assist patrons at the Neshoba County Fair with health aid and emergency transportation assistance; that she became ill while attending the fair and requested the assistance of the Neshoba County General Hosptal Ambulance Service operated by Quorum and the Fair Association; that a paramedic and the ambulance driver "for [the Ambulance Service] and all Defendants" declined to render assistance or transport Wright to a hospital; that this paramedic and ambulance driver were acting in the course and scope of their employment by the defendants (including the Fair Association), or as independent contractors; and that she suffered injuries and damages as a proximate result of their failure to provide medical assistance and transportation.

These allegations cannot fairly be said to involve an accident. Wright's allegation is that she requested medical assistance and/or transportation to the hospital, and yet the Fair Association and/or its agents, servants or employees failed and/or refused to provide her with such medical assistance and/or transportation. As Evanston correctly observes, even if the Fair Association may not have intended the consequences of this alleged refusal to provide such assistance and/or transportation, the alleged refusal to provide such assistance and/or transportation,

5

for whatever reason it may have chosen not to provide such
assistance and/or transportation, was not an accident.  It follows
that the underlying lawsuit does not involve allegations of
"occurrence" as defined by the Evanston policy.

　　　While this seems apparent, in response to Evanston's motion,
the Fair Association argues that there are numerous disputed
issues of fact which preclude summary judgment for Evanston at
this time.  For example, it argues, it is disputed whether Wright
requested assistance and transportation to the hospital; whether
the Fair Association had any duty to provide such assistance and
transportation; whether the Fair Association and/or its agents,
servants and employees declined to render such assistance or
transportation; and whether any such refusal proximately caused
bodily injury to Wright.[2]  It submits, therefore, that "whether
the Fair Association intended to refuse assistance or
transportation to [Wright] remains a genuine issue of disputed
fact," and that the coverage issue herein cannot be resolved until

---

[2]　　　Apparently, the Fair Association takes the position that
it hired an ambulance company as an independent contractor to
provide ambulance service to the fair grounds and that while the
ambulance company's personnel may have refused to provide
assistance or transportation to Wright (something about which the
Fair Association may take no position), the Fair Association did
not itself refuse to provide assistance or transportation and is
not responsible for the ambulance company's actions in this
regard.  It submits that there is a dispute as to whether the Fair
Association entered a contract with the ambulance company to
provide service to the fair grounds and whether the ambulance
company was an independent contractor.

it is decided whether the Fair Association in fact refused to
render assistance or transportation to Wright.  However,
Mississippi law is clear:  "An insurer's duty to defend an action
against its insured is measured by the allegations of the
plaintiff's pleadings regardless of the ultimate outcome of the
action."  <u>American States Ins. Co. v. Natchez Steam laundry</u>, 131
F.3d 551, 553 (5th Cir. 1998).  What is determinative in evaluating
whether the potential for coverage exists is what Wright has
alleged in her complaint; and the facts she has alleged do not
constitute an occurrence.

Along these lines, the Fair Association argues that the "duty
to defend remains intact" because Evanston is on notice of "true
facts" claimed by the Fair Association that "would seem to belie a
conclusion that its actions were intentional."  Under Mississippi
law, the duty to defend is usually determined solely by reference
to the allegations in the underlying complaint, but there is an
exception:

> Mississippi courts impose a duty to defend upon an
> insurer who has knowledge, or could obtain knowledge
> through a reasonable investigation, of facts that
> trigger coverage [and] a divergence may exist between
> the facts as alleged in the Petition and the actual
> facts as they are known or reasonably ascertainable by
> the insurer, in which later case the insurer has a duty
> to defend.

<u>American Nat'l Gen'l Ins. Co. v. Jackson</u>, 203 F. Supp. 2d 674,
680-81 (S.D. Miss. 2001).  However, while the Fair Association
correctly describes the rule, its attempt to apply the rule here

7

is misguided.  As the Fair Association notes, in <u>Mavar Shrimp &</u> <u>Oyster Co. v. United States Fidelity & Guaranty Co.</u>, 187 So. 2d 871, 875 (Miss. 1966), the court explained that "under the 'true facts' exception, a duty to defend exists only if the insured learns of 'true facts' which, 'if established, present potential liability of the insured' and a cause of action based on those facts would be covered by the policy."  Thus, "if the unpled 'facts' would . . . support a claim for liability against the insured, the knowledge of these facts by the insurer [would] give rise to a duty to defend."  <u>Acceptance Ins. Co. v. Powe Timber</u> <u>Co., Inc.</u>, 403 F. Supp. 2d 552, 559 (S.D. Miss. 2005).

The Fair Association's argument in support of the "true facts" exception mirrors an argument considered by this court in the <u>Powe</u> case.  In <u>Powe</u>, the insured had given or sold contaminated wood chips to one Charles Reid without warning Reid of dangers posed by exposure to the wood chips; Reid, in turn, sold the wood chips to others who later sued, claiming to have been harmed by their exposure to the wood chips.  The insured, Powe, citing <u>Allstate Ins. Co. v. Moulton</u>, 464 So. 2d 507, 510 (Miss. 1985), argued that "because these allegations involve intervention by a "third force," and/or a <u>failure</u> by Powe to act (as contrasted with an affirmative, volitional act), these allegations create the potential for coverage."  403 F. Supp. 2d at 556.  The court in <u>Moulton</u> had stated that in determining

8

whether there had been an occurrence, "[t]he only relevant consideration is whether, according to the declaration, the chain of events leading to the injuries complained of were set in motion and followed a course consciously devised and controlled by [the insured] without the unexpected intervention of any third person or extrinsic force".

Although this court in Powe rejected the argument based on the facts presented there, the Fair Association reasons that the "true facts" here are that the ambulance personnel who are alleged to have refused assistance or transportation to Wright were not agents, servants or employees of the Fair Association, but rather were independent contractors, and that consequently, their alleged refusal to treat or transport Wright constitutes an "unexpected intervention of third persons." As Evanston correctly notes, however, if the ambulance personnel were not employees of the Fair Association, then "intervention" never becomes an issue, for the "intervention by a third party or extrinsic force" is an event which cuts off negligence by the insured. Here, the only allegation of negligence by the insured is its refusal to render assistance/ transportation to Wright, so that if the ambulance service personnel are not the Fair Association's agents or employees, then there are no claims of negligent acts or omissions at all against the Fair Association and hence the "true facts" claimed by the Fair Association, even if established, do not

"present potential liability of the insured."  <u>Mavar Shrimp &</u>
<u>Oyster Co.</u>, 187 So. 2d at 875.  The "true facts" exception
therefore has no applicability here.[3]

In sum, for the foregoing reasons, the court concludes as a
matter of law that Evanston has no defense or indemnity obligation
relative to Wright's lawsuit and its motion for summary judgment
is therefore granted.

SO ORDERED this 30th day of June, 2006.


                              /s/ Tom S. Lee
                              UNITED STATES DISTRICT JUDGE

---

[3]     The court does note that while the disputed issues of
fact identified by the Fair Association are obviously material to
the Fair Association's liability in the underlying action, they
are not material to the determination of whether the policy
provides coverage for Wright's claims.  For this reason, its
argument that the court cannot decide the coverage issue until
there has been more opportunity for discovery is without merit.

10